FILED & ENTERED

NOV 30 2022

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY egonzale DEPUTY CLERK

# UNITED STATES BANKRUPTCY COURT

# CENTRAL DISTRICT OF CALIFORNIA

# SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In re:<br><br>Victory Entertainment Inc<br><br>　　　　　　　　　　　Debtor(s).<br><br>Howard M Ehrenberg<br><br>　　　　　　　　　　　Plaintiff(s),<br>　v.<br><br>HALA Enterprises, LLC<br><br>　　　　　　　　　　　Defendant(s). | CHAPTER 7<br><br>Case No.:  1:18-bk-11342-VK<br>Adv No:   1:20-ap-01056-GM<br><br>**TENTATIVE RULING, AS ADOPTED BY THE COURT AS ITS MEMORANDUM OF OPINION, ON PLAINTIFF'S MOTION IN LIMINE NO. 2 TO EXCLUDE THE EXPERT TESTIMONY OF GREGORY EIDSON [dkt. 130]**<br><br>Date:　　　November 29, 2022<br>Time:　　　10:00 AM<br>Courtroom: 303 |

　　　　Mr. Eidson was hired to opine on "reasonable rental value" for the property. The accepted method is to compare this property to comparable propert(ies) on anyearly

-1-

basis. In this case, one would start in 2008 and find comparables (or a comparable index), then do the same for each succeeding year starting in 2009, 2010, etc. However, he did not do this. The method that he chose to use was untired (even by him), his own creation, and improper. Beyond that he underestimated the square footage [estimating 9,110 square feet rather than using the actual square footage of 11,050]. He also failed to consider important data, including that the building was renovated with $500,000 in improvements in 2008 and that it was rented to a new tenant in 2018 for #30,000 per month.

The method that he created started with ascertaining the 2018 rental value through choosing a market rate for that year and then using the CoStar market trend data for the North Hollywood submarket to back up to 2008. Then he brought the 2008 value forward for each ensuing year by virtue of the Consumer Price Index, but not exclusively for the North Hollywood submarket.

Opposition

Mr. Eidson is expressing an opinion on the ultimate issue of fact. Mr. Eidson agrees that it would be best to use direct comparables, but the market does not always provide perfect data. Markets follow patterns, well-located properties have higher rents, older properties (depending on location, visibility, etc.) provide lower rents. Using the current rent and moving backward is the same pattern as using the current rent and using market trends to estimate future value. Mr. Eidson used market patterns as a basis of his appraisal and this is an appropriate method under the circumstances in this case.

There is no strictly defined methodology to establish retrospective value. Mr. Eidson, as an expert, can develop the most reliable method in which he has confidence.

Mr. Beck goes on to state the reasons for Mr. Eidson's choice of method.

///
///

Reply

Mr. Eidson failed to use a legitimate method. He developed it solely for this case and had never used it before. *Daubert* requires that the use of a method that has been accepted in the field is a threshold criteria for admissibility of an expert opinion. This does not meet that criteria.

Further, Mr. Eidson used only the information from a single real estate broker as to the price that the property should rent at and he used that to search for "comps" that were below a certain rental value. In using the opinion of the real estate broker, Mr. Eidson is merely regurgitating what someone else told him and this is inadmissible. Throughout, Mr. Eidson focuses on the favorable data to the Trustee's position and ignores the unfavorable data. And he fails to use the new rent immediately after the Debtor vacated as a comparable – it is not part of his report and he felt that it was too high and did not represent the market.

Proposed Ruling

FRE 702 states:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

There is no dispute that Mr. Eidson meets the test of being qualified. The question is whether his choice of data and method for analysis meet the other three requirements. The determination of this is within the discretion of the trial judge.

*Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993) concerns a claim against a pharmaceutical company which manufactured an antinausea drug that harmed the fetus of pregnant women who took it. In looking at FRE 702 in this context, the Supreme Court dealt with issues of whether scientific propositions were subject to peer review, what is the known or potential rate of error, and is there widespread acceptance of the method used. But it stated that these are flexible standards.

    The case before this court does not deal with the complexity of the side-effects of a medication or any other newly discovered entity or scientific method. Rather, it is the valuation of real property over a finite number of years. This is "every day stuff" in bankruptcy cases. There may be one method that is the most popular and reliable and the parties and the court have a right to know why that was not used in this case. If a different method is chosen - be it new or seldom used – the court will weigh that against the standard method for reasonability and reliability. In the long run it may be given no weight or it may be found to meet the test of FRE 702. That will be determined at trial.

    Mr. Eidson qualifies as an expert in the area to which he intends to testify. An expert is not limited to a single method, even if there is one that is generally used. He is subject to cross-examination as to why he deviated from the more usual method, but this will go to the weight that the Court gives his testimony and opinion. There is no reason to exclude him from testifying.

    DENY THE MOTION

###

Date: November 30, 2022

Geraldine Mund
United States Bankruptcy Judge